376-08/GMV/BGC
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Gina M. Venezia (GV 1551)
Barbara G. Carnevale (BC 1651)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RIVA SHIPPING S.A., PANAMA,

                Plaintiff,

    -against-

FAIR WIND (EUROPE) S.A. a/k/a FAIR WIND
(EUROPE) S.A., LAUSANNE,

                Defendant.
------------------------------------------------------------x

08 Civ.

**VERIFIED COMPLAINT**

Plaintiff RIVA SHIPPING S.A., PANAMA (hereinafter "RIVA"), for its Verified Complaint against Defendant FAIR WIND (EUROPE) S.A. a/k/a FAIR WIND (EUROPE) S.A., LAUSANNE (hereinafter "FAIR WIND"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2. At all times material hereto, Plaintiff RIVA was and still is a business entity duly organized and existing under the laws of a foreign country with an address in Panama.

NYDOCS1/308142.1

3. At all times relevant hereto, Defendant FAIR WIND was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address in Lausanne, Switzerland.

4. On or about February 6, 2007, Plaintiff, in the capacity as owner of the M/V RIVA, entered into a maritime contract of charter party with Defendant FAIR WIND, as charterer, for the carriage of iron ore pellets in bulk from Canada to China. A copy of the charter party is annexed hereto as Exhibit A.

5. Plaintiff RIVA duly tendered the vessel into the service of Defendant FAIR WIND.

6. During the performance of the charter, Defendant FAIR WIND incurred demurrage in the amount of $192,163.36, for which it is liable to Plaintiff RIVA under the terms of the charter party. A copy of the Final Freight Invoice is annexed hereto as Exhibit B.

7. Despite due demand by Plaintiff RIVA, Defendant FAIR WIND has refused and/or otherwise failed to pay the amount due and accrued under the charter party.

8. Plaintiff RIVA has fulfilled all obligations required of it under the charter party.

9. The charter party provides for the application of English law and disputes between the parties shall be referred to arbitration in London and arbitration of the substantive matters has been commenced.

10. This action is brought to obtain jurisdiction over Defendant FAIR WIND and to obtain security in favor of Plaintiff RIVA in respect to its claim against FAIR WIND and in aid of the London proceedings.

11. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

12.     This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

13.     Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $140,000 and interest on its damages are estimated to be $46,119.18 (calculated at the rate of 8% for a period of 3 years, the estimated time for completion of the proceedings in London).

### Request for Rule B Relief

14.     Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in its name or for its benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

15.     The total amount to be attached pursuant to the calculations set forth above is **$378,282.54**

WHEREFORE, Plaintiff RIVA SHIPPING S.A., PANAMA prays:

a.     That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b. That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including **$378,282.54** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendant (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received, or transferred in its name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c. That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
July 10, 2008

                                        FREEHILL HOGAN & MAHAR, LLP
                                      Attorneys for Plaintiff
                                      RIVA SHIPPING S.A., PANAMA

By: _____
      Gina M. Venezia (GV 1551)
      Barbara G. Carnevale (BC 1651)
      80 Pine Street
      New York, NY  10005
      (212) 425-1900

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

GINA M. VENEZIA, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Gina M. Venezia

Sworn to before me this
10th day of July 2008

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

NYDOCS1/308142.1                                5

# EXHIBIT "A"

The Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

| | |
|---|---|
| 1. Shipbroker<br>V.SHIPS PLC, LONDON<br>[V.SHIPS COMMERCIAL stamp: Cale House, 1 Paddington Street, London EC4M 7HS] | THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "G E N C O N"<br>Part I |
| | 2. Place and date<br>London, 6th February 2007 |
| 3. Owners/Place of business (Cl. 1)<br>RIVA SHIPPING S.A., PANAMA | 4. Charterers/Place of business (Cl. 1)<br>FAIR WIND (EUROPE) S.A., LAUSANNE |
| 5. Vessel's name (Cl. 1)<br>"RIVA" | 6. GRT/NRT (Cl. 1)<br>67727 / 42509 |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)<br>Summer DWT 132,016 MT on 16,787 M | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (abt.) (Cl. 1)<br>About 7th March 2007 | |
| 10. Loading port or place (Cl. 1)<br>1 SB 1 SP POINTE NOIRE, CANADA AA. OWNERS SATISFY THE PORT RESTRICTION BY THEMSELF. | 11. Discharging port or place (Cl. 1)<br>SEE CLAUSE 53.<br>Vessel to proceed from loadport to discharge port via Suez Canal. |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br>120,000 MT 10% MORE OR LESS IN OWNERS' OPTION HARMLESS IRON ORE IN BULK, DRI/DRIP/HBI ALWAYS EXCLUDED. CARGO TO BE LOADED IN ACCORDANCE WITH IMO/LOCAL REGULATIONS. | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)<br>SEE CLAUSE 29 | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)<br>SEE CLAUSE 29 |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if the vessel is gearless)<br>FREE IN, OUT, SPOUT TRIMMED. ALTERNATIVE (B)<br>VESSEL IS GEARLESS | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b)). If total laytime for load. and disch., fill in c) only) (Cl. 6)<br>a) Laytime for loading<br>SEE RIDER CLAUSES NO. 24-26 |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging<br>SEE RIDER CLAUSES NO. 27-28 |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7)<br>SEE RIDER CLAUSE NO.30 | 19. Cancelling date (Cl. 10)<br>16TH MARCH 2007 |
| 20. Brokerage commission and to whom payable (Cl. 14)<br>SEE RIDER CLAUSE NO.43 | |
| 21. Additional clauses covering special provisions, if agreed.<br>RIDER CLAUSES 18-54 AS PER ATTACHED ARE DEEMED FULLY INCORPORATED IN THIS CHARTER PARTY. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>Signed on behalf of Owners<br>as per authority<br>NICHOLAS G. MOUNDREAS SHIPPING S.A.<br>As non responsible Agents only<br>[stamp: NICHOLAS G. MOUNDREAS SHIPPING S.A. SHIPBROKERS & SHIP OPERATORS] | Signature (Charterers) |

Computer generated form printed by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen, using software which is the copyright of Strategic Software Ltd.

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if ~~shipment of deck cargo agreed same to be at Charterers' risk~~) as stated in Box 12 (~~Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required~~) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken Bill of Lading quantity as indicated in Box 13 at the rate stated in Box 13.

Owners' Responsibility Clause
Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever.
Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

Deviation Clause *See Rider Clause No. 34-35*
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

Payment of Freight *See Rider Clause no. 29*
~~The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.~~
~~Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers, if required, at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.~~

Loading/Discharging Costs
(a) ~~Gross Terms~~
~~The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and~~ ~~the necessary men on shore or on board the lighters to do the~~ ~~or here, vessel only heaving the cargo on board.~~
~~If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.~~
~~Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.~~
~~The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.~~
(b) F.I.O. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).
Indicate alternative (a) or (b), as agreed, in Box 15.
Laytime *See Rider Clause no. 24-26*
(a) ~~Separate laytime for loading and discharging~~
~~The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
~~The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
(b) ~~Total laytime for loading and discharging~~
~~The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
(c) ~~Commencement of laytime (loading and discharging)~~
~~Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.~~
~~Time actually used before commencement of laytime shall count.~~
~~Time lost in waiting for berth to count as loading or discharging time, as the case may be.~~
~~Indicate alternative (a) or (b) as agreed in Box 16.~~

7. Demurrage *See Rider Clause no. 30*
~~Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be allowed Merchants altogether at ports of loading and discharging.~~

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but ~~only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.~~

9. Bills of Lading
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but ~~should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.~~

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. General Average *See Rider Clause no.44*
~~General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).~~

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency *See Rider Clause no.31*
~~In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.~~

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
~~In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.~~

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-

This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is the copyright of Strategic Software Ltd. (SSL). On or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion. 170-177

16. War Risks ("Voywar 1950")*Replaced by "Voywar 1993"* 178
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution. 179-183

(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter. 184-188

(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith.
In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case [pa]yable on the quantity delivered. 189-202

(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the last of the loading ports, if more than one, it appears that further performance of the contract will subject the Vessel, her Master and crew or her cargo, to war risks, the cargo shall be discharged, or if the discharge has been commenced shall be completed, at any safe port in vicinity of the port of discharge as may be ordered by the Charterers. If no such orders shall be received from the Charterers within 48 hours after the Owners have despatched a request by telegram to the Charterers for the nomination of a substitute discharging port, the Owners shall be at liberty to discharge the cargo at any safe port which they may, in their discretion, decide on and such discharge shall be deemed to be due fulfilment of the contract of affreightment. In the event of cargo being discharged at any such other port, the Owners shall be entitled to freight as if the discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto. 203-219

(5) (a) The Vessel shall have liberty to comply with any directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, destination, zones, waters, discharge, delivery or in any other wise whatsoever (including any direction or recommendation not to go to the port of destination or to delay proceeding thereto or to proceed to some other port) given by any Government or by any belligerent or by any organized body engaged in civil war, hostilities or warlike operations or by any person or body acting or p[urporti]ng to act as or with the authority of any Government or be[lligere]nt or of any such organized body or by any committee or person having under the terms of the war risks insurance on the Vessel, the right to give any such directions or recommendations. If, by reason of or in compliance with any such direction or recommendation, anything is done or is not done, such shall not be deemed a deviation. 220-234

(b) If, by reason of or in compliance with any such directions or recommendations, the Vessel does not proceed to the port or ports named in the Bill(s) of Lading or to which she may have been ordered pursuant thereto, the Vessel may proceed to any port as directed or recommended or to any safe port which the Owners in their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract of affreightment and the Owners shall be entitled to freight as if discharge had been effected at the port or ports named in the Bill(s) of Lading or to which the Vessel may have been ordered pursuant thereto. 235-245

(6) All extra expenses (including insurance costs) involved in discharging cargo at the loading port or in reaching or discharging the cargo at any port as provided in Clauses 4 and 5 (b) hereof shall be paid by the Charterers and/or cargo owners, and the Owners shall have a lien on the cargo for all moneys due under these Clauses. 246-250

GENERAL ICE CLAUSE 251
*Port of loading* 252

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void. 253-258

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum) all other conditions as per Charter. 259-268

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port. 269-274

(d) This Ice Clause not to apply in the Spring. 275

*Port of discharge* 276

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage, or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice.
Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination. 277-284

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge. 285-288

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion. 289-294



This document is a computer generated GENCON form printed by authority of The Baltic and International Maritime Council (BIMCO), using software which is the copyright of Strategic Software Ltd (SSL) [altera]tion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document, and which is not clearly visible, then the original BIMCO approved document shall apply. BIMCO and SSL assume no responsibility for any loss or damage caused as a result of discrepancies between the original BIMCO approved document and this document.

RIDER CLAUSES TO MV "RIVA"
CHARTER PARTY DATED 6TH FEBRUARY 2007

### Clause 18 - Vessel's Description

M/V "RIVA" ex 'PRIDE'
-------------------------------

Straight Bulkcarrier - str carriage of heavy cargoes
Panama Flag
Built 1981 - Mitsui Tamano
Class LR Highest - SS due 2007
Passed DD and Intermediate Survey 6/2004
(also passed URS 13/26/27/30/31 on 6/2004)
Also completed the IACS recommendation for strengthening of No.1 bulkhead
GRT/NRT: 67727/42509
Dimensions: LOA 263 M/LBP 253 M/Breadth 42 M/Depth 22.80 M
Summer deadweight 132,016 MT on 16.787 M (55'01") SSW - TPI 247 MT
9 HO/9 HA
HA Dims: No.1 13.60 M x 15.72 M, Nos.2-9 13.60 M x 18.92 M
Hatchcovers two panels side rolling chain driven type
Grain Capacity 5,000,729 CFT
Engine/Bridge AFT

- All details about

Vessel's loadable cargo quantity  : about 126,000 Mts without guarantee
Vessel's P & I Club               : The American Club
Vessel's estimated time of arrival Antwerp on or about 24/25 February all going well, weather permitting thus her eta P.Noire on 6/7 March all going well, weather permitting, unforeseen circumstances always expected.

Owners guarantee and confirm that:

- That vessel to be gearless, self-trimming single deck bulk carrier, with highest Lloyds classification, or equivalent and so maintained throughout the voyage.

- Vessel to be fully suitable in all respects for the carriage of Iron Ores and performing this voyage charter.

- Vessel to have no centre lines beams or bulkheads in any holds or hatchways destined for loading.

- Hatch covers to be mechanical type (pontoons subject to approval) and shall not impede the normal operation of the ship loader, the loading operation itself, or the spout trimming.

- Vessel's hull and machinery insurance shall be fully maintained throughout the voyage.

### Clause 19 - ETA Notice
Masters/Owners or their Agents have to give Charterers/Shippers with 10/7/5/3/2 days notices of estimated date of arrival (ETA) of the vessel and thereafter 24 and 12 hours definite notice before vessel arrival at loading port.

Loadable quantity to be advised by Owners/Masters with the first ETA notice which is for Charterers'/Shippers' reference. Exact loadable quantity to be declared in writing by Master 48 hours before vessel's arrival at loading port.

Upon sailing from loading port, Master to advise Charterers and their agents at the discharging port by telex/cable/fax of time of sailing, Bills of Lading quantity, holdwise loaded, sailing draft, vessel's ETA at discharging port and estimated arrival draft.
Thereafter, Master/Owners have to advise the same parties 15/10/7/5/3/2 days and 24 hours prior to ETA at discharging port.

### Clause 20 - Vessel's Condition
The vessel shall be seaworthy and suitable at all times for loading/carriage/discharge of iron ores.

No deep tank to be tendered for cargo. All space tendered shall be suitable for normal grabs discharge. An extra expense incurred in discharging cargo from places inaccessible to Receiver's mechanical grabs shall be for Owner's account and any time thereby lost shall not be counted as Laytime or time on demurrage.

### Clause 21 - Stevedore's Damage
All stevedore damages to be settled directly between Owners and stevedores. Charterers will assist Owners to recover eventual stevedore's damages only when being notified in writing by the Master at the time of occurrence of damage or latest within 24 hours. Thereafter, Master to co-operate with Charterers and agents on giving prompt notice of claim in writing to party causing the same latest before sailing. Master to use his best efforts to obtain written acknowledgment by responsible parties causing damage unless damage being made good in the meantime by stevedores, otherwise Charterers will not concern.

### Clause 22 - Loading/Discharging Rates
Cargo to be loaded, spout trimmed into the vessel's holds free of risk and expenses to Owners at the rate of 40,000 metric tons per weather working day of 24 consecutive hours, Saturdays, Sundays and holidays included (except Statutory Holiday).

Cargo to be discharged free of risk and expenses to Owners at the rate of :-
15,000 MTS PWWD SHINC for South China
15,000 MTS PWWD SHINC for Shanghai/Riverports
25,000 MTS PWWD SHINC for N.China ports incl Qingdao/Rizhao
25,000 MTS PWWD SHINC for Beilun
per weather working day of 24 consecutive hours, Saturdays, Sundays and holidays included (except Statutory Holiday).

### Clause 23 - Hatches Operation
All opening and closing of hatches to be done by vessel's crew if local labour and/or regulation permitted and time to count, except 1st opening and last closing of hatches, in which case time not to count.

### Clause 24 - NOR Tendering at Loadport
Notice of Readiness (NOR) may be tendered after arrival of vessel at loading port at any time irrespective of official office hours, Saturdays, Sundays and holidays included, whether vessel
is in berth or not, whether in port or not, whether in free pratique or not, whether custom cleared or not, and ready to receive cargo in every respect, in case vessel not ready, time to stop counting from time of rejection till vessel is ready.

Notice of Readiness (NOR) may be tendered prior to such inspection, but if the vessel is found not to be gas free, then notice of readiness is to be cancelled and master to submit a new notice of readiness after the vessel has been passed by the surveyor.

### Clause 25 - Laycan
Shipment period: 06th / 16th March 2007 if vessel arrives earlier and permitted to commence loading earlier, used time to count as per Charter Party.

Should it appear that the vessel may not meet the agreed Laycan, Owners are to advise Charterers accordingly and at the same time advise a revised Laycan which should be within three (3) days more or less compared with original Laycan. Within twenty-four hours on receipt of such advice, Charterers is to confirm whether or not he can accept the vessel basis the revised Laycan. If failing, Owners can consider themselves free from any commitment under this Charter Party and seek other employment for the vessel. In the event the revised Laycan is accepted by Charterers, Laytime commence upon loading starts and basis the loading port's practice of "First come, First serve".

### Clause 26 - Laytime
Laytime for loading shall commence twelve (12) running hours after the Notice of Readiness is tendered, subject to free Pratique is granted, whether in berth or not, unless loading is sooner commenced, in which case such time actually used shall count as Laytime.

Laytime shall commence (24) running hours after the Notice of Readiness is tendered at first discharge port and 24 hours at second discharge port (if second discharge port used), whether in berth or not, unless discharging is sooner commenced, in which case such time actually used shall count as Laytime at both discharging ports.

Cost of any extra trimming required by a vessel shall be for Owners' account. Any time lost in the trimming shall not count as Laytime.

Any time required by the Master of the vessel will not count as Laytime.

RIDER CLAUSES TO MV "RIVA"
CHARTER PARTY DATED 6TH FEBRUARY 2007

Clause 26 – Laytime contd...

In case normal loading has to be interrupted due to insufficient ballast pump capacity in relation to loading capacity, any such time lost shall not count as Laytime.

Normal working hours at loading port are understood to be from zero (0) to twenty-four (24) o'clock, including Saturdays, Sundays and holidays, ship's crew and officers' overtime shall be for owners' account.

In case loading has to be interrupted due to reasons of responsibility of the vessel, such time lost shall not count as Laytime. Stoppage of loading due to breakdown of the ore loading plant / equipment or power failure on shore shall be counted as Laytime.

All time lost due to vessel's deballasting, checking ballast, draft checks or trim checks, or related expenses, are for Owners' time/account.

First shifting from anchorage or vessel's current unloading berth to Charterers'/Shippers' nominated berth to be for Owners' account. Thereafter any shifting between/from berth/berth(s) if any to be for Charterers' time / account / expenses.

Any time necessarily required by the vessel to wait for tide after completion of loading shall not count as Laytime. Laytime will cease to count from the time of completion of loading.

Should the loading of the vessel be obstructed due a strike or lockout directly affecting the loading work, such time lost shall not count as Laytime.

Such strike or lockout shall, however, have to be certified by port administrative officer at a loading port and such certificate shall be presented by shipper to receiver or their agents before the vessel's sailing time from the loading port.

Any stoppage of loading caused by reason other than mentioned above, such as labour sabotage or dispute between labourers and port authorities, or between labourers and shipper at the loading port, shall not be recognized as strikes or lockouts provided herein. Vessel nominated by Charterers/receivers to be in a gas free condition to have a valid gas free certificate on board prior to presentation at load port.

Laytime to be non-reversible.

Clause 27 - NOR Tendering at Disport(s)
Notice of Readiness shall be tendered in writing at any time day or night, Saturdays, Sundays and holidays included, after the vessel has arrived, whether vessel is in berth or not, whether in port or not, whether in free pratique or not, whether custom cleared or not, and ready in all respects to be discharged. If the discharging berth is unavailable at this time, the vessel may tender Notice of Readiness from the normal recognized waiting place and whether or not customs and/or quarantine authorities has cleared the vessel.

Page 4 of 9

### Clause 28 - Time not to count as Laytime
a) Unloading Stoppage due to exclusive responsibilities of vessel's requirements shall not count as Laytime.
b) Laytime shall end on completion of discharging.
c) Time used for sailing from anchorage to wharf till all fastened at the designated loading and discharging berth(s).
d) Time used for draft survey.
e) The stoppage caused by adjusting ballast (or deballasting).
f) The stoppage caused by bad weather.
g) Stoppage or partial stoppage caused by Owners and partial stoppage as pro rata.
h) Stoppage caused by force majeure.
i) Discharging shall complete upon the last grab of cargo leaving hatches.

### Clause 29 – Freights and Freight Payment
95% freight shall be paid to Owners' account within 7 (seven) banking days after completion of loading signing/releasing B/L marked 'Freight payable as per C/P'.

Freight to be paid basis discharging option with lowest freight option, however Charterers to pay the difference/additional freight as soon as actual discharge port is known, but always before breaking bulk.

Balance freight with demurrage/dispatch if any shall be settled within 30 days after completion of discharging.

Full freight shall be considered earned as cargo being loaded on board, discountless and non-returnable whether vessel and/or cargo lost or not lost.

Freight to be paid to: National Bank of Greece,
Shipping Branch,
Akti Miaouli + Bouboulinas 2
185 36 Piraeus - Greece
Swift: ETHNGRAA
USD Account No    : 196/303783-54
USD IBAS          : GR02 0110 1962 0000 1963 0378 354
In favour of      : Riva Shipping S.A.
Ref hire of MV "RICA" C/P DD 6th February 2007
Corresponding bank : Bankers Trust Co. N.Y.,
Swift             : BKTRUS33/ABA:021001033


USD 36.00/PMT FIOST basis 1/1 South China (Fangcheng/Hong Kong range)
USD 37.00/PMT FIOST basis 1/1 North China (Rizhao/Xingang range)
USD 38.50/PMT FIOST basis 1/2 Qingdao or Rizhao + Riverport
USD 37.45/PMT FIOST basis 1/2 Beilun + Riverport
USD 38.00/PMT FIOST basis 1/2 Shanghai + Riverport

### Clause 30 - Demurrage/Despatch
Demurrage at the rate of USD 44,000.00 per day or pro rata for any part of a day for all time lost at both loading & discharging port(s). Despatch at the rate of USD 22,000.00 per day or pro rata for any part of a day, on working time saved at both loading & discharging port(s).

Demurrage/Despatch if any to be settled together with balance 5% freight within thirty (30) day after the completion of discharge.

### Clause 31 - Agents
Charterers' agent at loading port, Charterers' agent at discharging port(s) provided competitive.

### Clause 32 - Cargo Delivery
Charterers will endeavour to collect relevant original Bill(s) of Lading for presentation at discharging port(s) for cargo delivery.

In case original Bill(s) of Lading is not available at discharging port(s), Master/Owners allow cargo to be discharged against Charterers' Letter of Indemnity but wording as per Owners' PNI Club without bank guarantee/bank endorsement.

### Clause 33 - Hold Cleanliness
Vessel's holds shall be cleaned and dried at Owners' account before loading commences.

### Clause 34 - Laws & Regulations
The vessel should be acceptable to the relevant authorities and conform to all laws/regulations and requirements in force at or applicable to the port of loading/discharging, and be maintained in standards of accommodation, equipment, fixtures and fittings.

### Clause 35 - Deviation
Owners shall ship the cargoes within the time of shipment stipulated at agreement of this Charter Party.

The carrying vessel shall sail and arrive at the port of destination within the normal and reasonable period of time, any unreasonable deviation or delay is not allowed.

### Clause 36 - Cargo Damages/Losses
If the vessel suffer an accident en route, Owners shall timely advise Charterers to that effect. Owners shall be liable to Charterers for any and all damages and/or losses caused by Owners' failure to give such an advice in a timely fashion.

RIDER CLAUSES TO MV "RIVA"
CHARTER PARTY DATED 6TH FEBRUARY 2007

### Clause 37 - Lights
Charterers' consignees shall, with safety permitting, have the privilege of working all hatches at all time.

Vessel to provide sufficient lights for night work on board to load/discharge cargo free of expenses and risks to the consignees.

### Clause 38 - Overtime
Overtime work to be for account of the party ordering the same. But if ordered by Port Authority or their representatives, then, such expenses shall be at cost of Charterers. Officers'/Crews' overtime to be always for Owners' account.

### Clause 39 - Weight Determination
Weight shall be determined by vessel's draft at loading port by an independent sworn licensed marine surveyor. This surveyor will determine on weight which shall be the basis for Bill(s) of Lading. Master has the responsibility to co-operate with the surveyor and supervise he draft survey in order to avoid the possible cargo shortage found in the discharging port.

### Clause 40 - Taxes/Dues
Any Tolls/Taxes/Dues on cargo to be for Charterers' account, any Taxes/Dues on vessel/freight to be for Owner's account.

### Clause 41 – Port Expenses
Charterers to guarantee lumpsum D/AS upto max USD 90.000 for 1 discharge port or max USD 120,000 for two discharge ports in China in/out all inclusive including agency fees and Hong Kong channel fees (if applicable), and including Chinese tonnage dues certificates but excluding owners husbandry matters, said amount shall be deducted from freight payment without supporting vouchers/invoices.

### Clause 42 - Force Majeure
Either Charterers or Owners shall be relieved of and excused from its obligation to perform hereunder during any period that their or its performance is prevented or delayed by act of god, war, blockade, revolution, riot, insurrection, civil commotion, strike, lockout, fire, flood, storm, tempest or other inclement weather conditions, unforeseen blockade of the access channel at load/discharge port, maintenance practice of the port facilities by the duly constituted port authority, government restriction, regulation or order. In the event that such a force majeure condition occurs or its anticipated, the party directly affected shall advise the other party by fax/telex as soon as possible, and shall then submit a certificate issued by government authority or chamber of commerce as evidence of the force majeure condition. If the force majeure last over one month, Owners shall have the right to cancel the tonnage involved. Charterers'/Shippers' inability to obtain export license shall not be considered as force majeure.

### Clause 43 - Commission Structure
3,75 percent Address Commission +1,25 percent to V.Ships Plc, London., + 1.25% to Nicholas G. Moundreas Shipping S.A.

## Clause 44 - General Average/Law & Arbitration

General average shall be adjusted/stated/settled in London according to York-Antwerp Rules 1990 and/or any modification thereof.

This Charter Party shall be governed by English Law. Any dispute arising out of this Charter Party or any Bill(s) of Lading issued thereunder shall be referred to arbitration in London. One arbitrator being appointed by each party, in accordance with the Arbitration Acts 1959 and 1979 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the notification in writing of the appointment of the other party's
arbitrator, that party shall appoint his arbitrator within fourteen days failing which the decision of the single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final. The arbitrators shall be commercial men conversant with shipping matters.

## Clause 45 - Protective Clause

New Jason Clause, New Both-to-Blame Collision Clause, P & I Bunkering Clause, General Paramount Clause, General Average Clause, Chamber of Shipping War Risk Clauses 1/2/3 of 1952 are deemed to be incorporated in this Charter Party and in all Bill(s) of Lading issued hereunder. Furthermore following wording shall be printed on Bill(s) of Lading: "All terms, conditions, exceptions including the Arbitration Clause of the relevant Charter Party are herein fully incorporated". Bill(s) of Lading issued shall be Congenbill Edition 1994, the date of this Charter Party shall be used when filing out the B/L form.

## Clause 46 - P&I Cover

Owners guarantee that the vessel has entered the Protection and Indemnity Club for normal full coverage.

## Clause 47 - BIMCO Standard ISM Clause

Owners guarantee that the vessel is fully complying with all requirements of the International Safety Management (ISM) and holding a valid Safety Management Certificate (SMC). Upon
the request, the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Owners or "The Company" to comply with the ISM Code shall be for the Owners' account.

## Clause 48 - Confidentiality

All negotiations and this charter party to be kept strictly private and confidential by all parties involved. Owners/Charterers guarantee not to release the Charter Party details to any third parties including her agents.

## Clause 49 - Insurance

Overage insurance to be for Charterers account but Owners to contribute max USD 14,000 lumpsum deducted from fret payment.

RIDER CLAUSES TO M/V RIVA
CHARTER PARTY DATED 6TH FEBRUARY 2007

### Clause 50 - Seaworthiness
Vessel to be left in a safe/seaworthy trim/condition between discharging ports to Master's satisfaction.

### Clause 51 - Lighterage
If 2nd discharge port is Riverport, then vessel to discharge at first discharge port up to prevailing draft in the river.

Any expenses for lightening/lighterage if any, shall be for Charterers' account / time / expense / risk.

### Clause 52 – Route /Discharge
Vessel to proceed from loadport to discharge port via Suez Canal.
Charterers to declare actual discharge port(s) latest upon vessel passing Singapore.

### Clause 53 – Discharge Ports
1/2 safe anchorage/safe berth 1 safe port South China Fangcheng/Hong Kong range always afloat or in Charterers option,

1/2 safe anchorage/safe berth 1 safe port North China Rizhao/Xingang range always afloat or in Charterers option,

1/2 safe anchorage/safe berth 1 safe port out of Qingdao/Rizhao range always afloat plus 1 safe anchorage/safe berth 1 safe port Riverport (Shanghai area) upto Zhangjiagang always afloat (ie intention Shanghai or Zhangjiagang always afloat) or in charterers option,

1/2 safe anchorage/safe berth 1 safe port Beilun or Shanghai + 1/2 safe anchorage/safe berth Riverport upto Zhangjiagang.

Charterers guarantee no restrictions applicable at all above ports for the M/V RIVA dimensions.

### Clause 54 – Institute Warranty Limits
Any breach of Institute Warranty Limits to be for Owners account.

* End *

Owners:                                         Charterers:

For and on behalf of Owners
NICHOLAS G. MOUNDREAS SHIPPING S.A.
As non responsible Agents only.

# EXHIBIT "B"

ΑΠΟ:GOOD FAITH          ΑΡ.ΦΑΞ :2104226665          14 ΜΑΡ 2008 17:07   P1

# RIVA SHIPPING SA
## PANAMA

SHIP                    : M/V RIVA
CHARTERER/INVOICEE      : FAIRWIND
CHARTER PARTY DATE      : 6TH FEBRUARY 2007
LOADING PORT            : POINTE NOIRE
1ST DISCHARGING PORT    : BEILUN
2ND DISCHARGING PORT    : NANTONG
CARGO QUANTITY          : 126,371.941MT HRMLSS IRON ORE IN BULK

## FINAL FREIGHT INVOICE NO.FR.22ND -MAY -2007

1) Freight 126,371.941Mt x $ 37.45Pmt(1/2)          US$ 4,732,629.19
2) Demurrage at loadport Pointe Noire               US$   210,252.77
                                                    US$ 4,942,881.96

3) 3,75% Adcom on (1+2)       US$   185,358.07
4) 1,25% to Vships on (1+2)   US$    61,786.02
5) Overage insurance          US$    14,000.00
6) Lumpsum D/AS               US$   120,000.00
7) Despatch 1st disport       US$    29,776.38
8) Despatch 2nd disport       US$    56,145.83
9) Payment received v/d 2/4   US$ 3,990,430.37
10) Payment received v/d 27/4 US$   134,895.37     US$ 4,592,392.57
    Amount payable                                 US$   350,489.39

PAYMENT INSTRUCTIONS :
THE NATIONAL BANK OF GREECE,
SHIPPING BRANCH,
AKTI MIAOULI & BOUBOULINAS 2,
185 36 PIRAEUS – GREECE
SWIFT: ETHNGRAA
USD ACCOUNT NO: 196/303783-54
USD IBAN: GR02 0110 1962 0000 1963 0378 354
IN FAVOUR OF RIVA SHIPPING S A
REF: HIRE OF M/V RIVA C/P DD 6/02/07
CORRESPONDING BANK : BANKERS TRUST Co N.Y.,
SWIFT: BKTRUS33 /ABA : 021001033



fwd v/d 3/7  $ 158,326.03

due owners → $ 192,163.36